**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Lisa Ann Collins, | No. CV13-01839-PHX-DGC |
| Plaintiff, | **ORDER** |
| v. | |
| Carolyn W. Colvin, Acting Commissioner of Social Security, | |
| Defendant. | |

Plaintiff Lisa Ann Collins seeks review under 42 U.S.C. § 405(g) of the final decision of the Commissioner of Social Security ("the Commissioner"), which denied her disability insurance benefits and supplemental security income under section 1614(a)(3)(A) of the Social Security Act. Because the decision of the Administrative Law Judge ("ALJ") is supported by substantial evidence and is not based on legal error, the Commissioner's decision will be affirmed.

**I.    Background.**

Plaintiff was born in August 1960. She has a high school education and completed three years of college. Her prior job history includes work as a bartender, flooring installer, and a deli manager.

On May 20, 2011, Plaintiff applied for supplemental security income, alleging disability beginning December 30, 2010. Her application was denied initially on October 13, 2011, and upon reconsideration on May 18, 2012. On January 30, 2013, she

appeared with her attorney and testified at a hearing before the ALJ. A vocational expert also testified.

On April 17, 2013, the ALJ issued a decision that Plaintiff was not disabled within the meaning of the Social Security Act. The Appeals Council denied Plaintiff's request for review of the hearing decision, making the ALJ's decision final.

**II.    Standard of Review.**

The district court reviews only those issues raised by the party challenging the ALJ's decision. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001). The court may set aside the Commissioner's disability determination only if the determination is not supported by substantial evidence or is based on legal error. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is more than a scintilla, less than a preponderance, and relevant evidence that a reasonable person might accept as adequate to support a conclusion considering the record as a whole. *Id.* In determining whether substantial evidence supports a decision, the court must consider the record as a whole and may not affirm simply by isolating a "specific quantum of supporting evidence." *Id.* As a general rule, "[w]here the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (citations omitted).

**III.   The ALJ's Five-Step Sequential Evaluation.**

To determine whether a claimant is disabled for purposes of the Social Security Act, the ALJ follows a five-step process. 20 C.F.R. § 404.1520(a). The claimant bears the burden of proof on the first four steps, but at step five the burden shifts to the Commissioner. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).

At the first step, the ALJ determines whether the claimant is engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). If so, the claimant is not disabled and the inquiry ends. *Id.* At step two, the ALJ determines whether the claimant has a "severe" medically determinable physical or mental impairment. § 404.1520(a)

(4)(ii). If not, the claimant is not disabled and the inquiry ends. *Id.* At step three, the ALJ considers whether the claimant's impairment or combination of impairments meets or medically equals an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Pt. 404. § 404.1520(a)(4)(iii). If so, the claimant is automatically found to be disabled. *Id.* If not, the ALJ proceeds to step four. At step four, the ALJ assesses the claimant's residual functional capacity ("RFC") and determines whether the claimant is still capable of performing past relevant work. § 404.1520(a)(4)(iv). If so, the claimant is not disabled and the inquiry ends. *Id.* If not, the ALJ proceeds to the fifth and final step, where the ALJ determines whether the claimant can perform any other work based on the claimant's RFC, age, education, and work experience. § 404.1520(a)(4)(v). If so, the claimant is not disabled. *Id.* If not, the claimant is disabled. *Id.*

At step one, the ALJ found that Plaintiff has not engaged in substantial gainful activity since May 20, 2011. At step two, the ALJ found that Plaintiff has the following severe impairments: fibromyalgia; cervical and lumbar degenerative disc disease; headaches; and chronic obstructive pulmonary disease. At step three, the ALJ determined that Plaintiff does not have an impairment or combination of impairments that meets or medically equals an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Pt. 404. At step four, the ALJ found that Plaintiff has the RFC to perform:

> [L]ight work as defined in 20 CFR 416.967(b) except [Plaintiff] is limited to occasional push/pull with the bilateral upper extremities and occasional operation of foot controls with the bilateral lower extremities. [Plaintiff] should never climb ladders, ropes, and scaffolds. Yet, she can occasionally climb ramps and stairs, as well as balance, stoop, crouch, kneel, and crawl. In addition, [Plaintiff] should avoid even moderate exposure to extreme cold and humidity. She should avoid concentrated exposure to pulmonary irritants, poorly ventilated areas, dangerous machinery with moving mechanical parts, and exposed, unprotected heights.

- 3 -

A.R. 18. The ALJ further found that Plaintiff is unable to perform any of her past relevant work. At step five, the ALJ concluded that, considering Plaintiff's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that she could perform.

**IV.  Analysis.**

Plaintiff argues the ALJ's decision is defective for three reasons: (1) the ALJ misinterpreted evidence to her detriment; (2) the ALJ erroneously weighed medical source evidence; and (3) the ALJ failed to afford her due process. The Court will address each argument below.

**A.  Interpreting Evidence.**

Plaintiff argues that the ALJ contradicted herself by simultaneously finding that Plaintiff is severely impaired by fibromyalgia and that there is no documented diagnosis or objective test findings of Plaintiff's fibromyalgia. Doc. 15 at 5. Although the ALJ's opinion is not a model of clarity, the Court does not find legal error. At step two of the five-step analysis, the ALJ found that Plaintiff had a number of severe impairments, including fibromyalgia. A.R. 17. At step four, the ALJ found that the fibromyalgia was not disabling. A.R. 20 (the medical record does not support Plaintiff's claim "that she has been unable to work due to fibromyalgia"). As is clear from the sequential analysis itself, a conclusion that an impairment is severe does not mean that it is disabling.

Plaintiff also argues that the ALJ's finding that Plaintiff suffers from fibromyalgia moots the ALJ's attempt to discount Dr. Rosenberg's restrictive opinion. Doc. 21 at 1. Again, Plaintiff is incorrect. Although the ALJ found that Plaintiff was afflicted with fibromyalgia, the ALJ did not commit legal error or otherwise contradict herself by finding that Plaintiff was not disabled by the disorder.

**B.  Weighing of Medical Source Evidence.**

Plaintiff asserts that the ALJ improperly weighed the medical opinions of her treating physicians Drs. Woodall and Rosenberg, and the opinion of consultative

examiner Dr. Jones. The Court will address the ALJ's treatment of each opinion below.

### 1. Legal Standard.

The Ninth Circuit distinguishes between the opinions of treating physicians, examining physicians, and non-examining physicians. *See Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). Generally, an ALJ should give greatest weight to a treating physician's opinion and more weight to the opinion of an examining physician than to one of a non-examining physician. *See Andrews v. Shalala*, 53 F.3d 1035, 1040-41 (9th Cir. 1995); *see also* 20 C.F.R. § 404.1527(c)(2)-(6) (listing factors to be considered when evaluating opinion evidence, including length of examining or treating relationship, frequency of examination, consistency with the record, and support from objective evidence). If it is not contradicted by another doctor's opinion, the opinion of a treating or examining physician can be rejected only for "clear and convincing" reasons. *Lester*, 81 F.3d at 830 (citing *Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988)). A contradicted opinion "can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." *Lester*, 81 F.3d at 830-31 (citing *Andrews*, 53 F.3d at 1043).

An ALJ can meet the "specific and legitimate reasons" standard "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Cotton v. Bowen*, 799 F.2d 1403, 1408 (9th Cir. 1986). But "[t]he ALJ must do more than offer [her] conclusions. [She] must set forth [her] own interpretations and explain why they, rather than the doctors', are correct." *Embrey*, 849 F.2d at 421-22.

### 2. Charles J. Woodall, M.D.

Plaintiff's treating physician, Charles J. Woodall, M.D., specializes in family medicine. On February 1, 2012, Dr. Woodall opined that Plaintiff was "unable to work on a consistent basis" due to herniated discs in her neck and back that caused chronic

- 5 -

pain and required the use of narcotics. A.R. 511. The opinion contained no functional restrictions. A.R. 511. The ALJ accorded Dr. Woodall's opinion little weight. A.R. 22.

Dr. Woodall's medical opinion was contradicted by the opinion of Dr. Sallu Jabati, M.D., who is an examining physician, and the opinions of Drs. James J. Green, M.D. and Donald Robins, M.D., who are reviewing physicians. These physicians each opined Plaintiff had greater abilities than those identified in Dr. Woodall's opinion. A.R. 21-22. The ALJ could therefore discount Dr. Woodall's opinion for specific and legitimate reasons supported by substantial evidence. *Lester*, 81 F.3d at 830-31.

The ALJ provided four reasons for giving Dr. Woodall's opinion little weight. First, Dr. Woodall's opinion stated that Plaintiff was unable to work, which is an issue that is reserved to the Commissioner. A.R. 22. The Commissioner is responsible for determining whether a claimant meets the statutory definition of disability and does not give significance to a statement by a medical source that the claimant is "disabled" or "unable to work." 20 C.F.R. § 416.927(d). Thus, Dr. Woodall's opinion that Plaintiff was unable to work was not entitled to any deference and was properly evaluated in light of the evidence as a whole. *See McLeod v. Astrue*, 640 F.3d 881, 884 (9th Cir. 2011) ("Although a treating physician's opinion is generally afforded the greatest weight in disability cases, it is not binding on an ALJ with respect to the existence of an impairment or the ultimate issue of disability.").

Second, the ALJ asserted that Dr. Woodall's opinion is inconsistent with the medical record. A.R. 22. The ALJ's statements regarding the weight she accorded Dr. Woodall's opinion are found on page 9 of her decision (A.R. 22), and her detailed discussion of the medical evidence is found primarily on pages 6-8 (A.R. 19-21). Although this organization is not ideal, the decision makes clear that the ALJ relied on record evidence to support all of the reasons listed in her discussion of Dr. Woodall's opinion. The discussion of medical records on pages 6-8 addresses the ALJ's findings in detail, with many citations to the record. The ALJ notes the following: x-rays from

September 2011 revealed moderate diffuse degenerative changes of the cervical spine with changes suggestive of muscle spasms and imaging of the lumbosacral spine was negative (A.R. 464); x-rays from October 2012 of the hips showed only mild degenerative changes (A.R. 584); x-rays showed no evidence of any nerve root impingement, severe stenosis, progressive neurological deficits, infections, tumors, or fractures (A.R. 464, 584); treatment for her condition was conservative with routine prescriptions for pain medications, which she reported were effective and enabled her to function (A.R. 402, 406, 418, 421, 424, 482-85, 487-99, 501-04, 506, 557-72, 586); Plaintiff regularly denied muscle weakness or joint swelling (A.R. 370, 373, 398); examinations demonstrated normal musculature without skeletal tenderness or joint deformity and neurological deficiency (A.R. 370-71, 373-74, 398, 402, 415, 418, 430, 432, 482, 484, 488, 503, 560, 570); Plaintiff was not referred to a pain management specialist until late 2012 (A.R. 588); and there is no record evidence that Plaintiff has been hospitalized, treated at a pain clinic, received physical therapy, undergone surgery, or otherwise received treatment for her alleged pain. The Court finds the ALJ's explanation to be sufficiently clear to understand the basis for her decision.

Third, the ALJ noted that Dr. Woodall's medical findings were "minimal in nature." A.R. 22. In effect, the ALJ discounted Dr. Woodall's opinion because it was conclusory and brief. This was not error. *See Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005) ("[W]hen evaluating conflicting medical opinions, an ALJ need not accept the opinion of a doctor if that opinion is brief, conclusory, and inadequately supported by clinical findings.") (citation omitted). Dr. Woodall's opinion does not state how or why Plaintiff is unable to perform work in a competitive environment; instead, it merely states that Plaintiff is unable to work due to back pain and accompanying medications. A.R. 511. The Court concludes that the ALJ was warranted in discounting Dr. Woodall's opinion for this reason. *See Young v. Heckler*, 803 F.2d 963, 968 (9th Cir. 1986) (finding that an ALJ need not accept a treating physician's opinion which is "brief

- 7 -

and conclusory in form with little in the way of clinical findings to support [its] conclusion.").

Fourth, the ALJ asserted that Dr. Woodall's opinion is inconsistent with his own medical notes, which indicate Plaintiff's symptoms improve with medication. A.R. 22. Incongruity between a doctor's medical opinion and her treatment records or notes is a specific and legitimate reason to discount a doctor's opinion. *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008).

Each of these is a specific, legitimate, and permissible reason to discount Dr. Woodall's opinion as to Plaintiff's condition, and is supported by substantial evidence. The Court concludes that the ALJ's decision was not legal error.

### 3. Robert A. Rosenberg, M.D.

Plaintiff's treating physician, Robert A. Rosenberg, M.D., also specializes in family medicine. On May 23, 2012, Dr. Rosenberg completed a check-the-box form offering the following opinions: Plaintiff could continuously sit for a period of two hours and could sit less than three hours in an eight-hour work day; Plaintiff could continuously stand/walk for a single period of two hours and could stand/walk a total of less than three hours during an eight-hour work day; Plaintiff could occasionally lift 21 to 25 pounds and could occasionally carry 11 to 20 pounds; Plaintiff could never stoop, squat, crawl, climb, or reach; Plaintiff could occasionally grasp with her hands, never push/pull controls, and occasionally finely manipulate her hands; Plaintiff had mild restrictions as to unprotected heights, being around moving machinery, driving automobile equipment, and had a total restriction from exposure to dust, fumes, gases, and marked changes in temperature or humidity. A.R. 577-78.

On October 15, 2012, Dr. Rosenberg completed a second check-the-box form offering the opinion that Plaintiff had the following symptoms of fibromyalgia that have persisted since 2006 and impair Plaintiff's ability to do work-related activities: generalized pain, generalized tenderness, fatigue, 18/18 tender points, irritable bowel

syndrome, sleep disorder, cognitive dysfunction, memory impairments, anxiety, and depression. A.R. 573. Dr. Rosenberg also offered the following opinions: Plaintiff could continuously sit for a single period of 20 to 25 minutes at a time and could sit for a total of less than one hour in an eight-hour work day; Plaintiff could stand/walk continuously for a single period of one hour, and stand/walk for a total of less than one hour in an eight-hour work day; Plaintiff could occasionally lift six to ten pounds and could carry six to ten pounds; she could never stoop, squat, crawl, or climb, but that she could occasionally reach; Plaintiff could frequently grasp, push/pull with her hands, and occasionally finely manipulate with her hands; Plaintiff had mild restrictions as to unprotected heights, being around moving machinery, driving automobile equipment, and that she had a total restriction from exposure to dust, fumes, gases, and marked changes in temperature or humidity. A.R. 573-75. The ALJ accorded Dr. Rosenberg's opinions little weight. A.R. 22.

Dr. Rosenberg's medical opinion was contradicted by the opinion of Dr. Jabati, and the opinions of Drs. Green and Robins. These physicians each opined Plaintiff had greater abilities than those identified in Dr. Rosenberg's opinion. A.R. 21-22. The ALJ therefore could discount Dr. Rosenberg's opinion for specific and legitimate reasons supported by substantial evidence. *Lester*, 81 F.3d at 830-31.

The ALJ provided three reasons for discounting Dr. Rosenberg's opinion. First, the ALJ asserted that Dr. Rosenberg's opinions were inconsistent with the medical record and unsupported by Dr. Rosenberg's own treatment notes. A.R. 22. In the ALJ's discussion of the medical evidence, she noted "there is no documented diagnosis [of fibromyalgia]" or any "medical examinations that show at least 11 positive tender points bilaterally and above and below the waist as required by 1990 ACR Criteria and SSR 12-2p." A.R. 20. Plaintiff acknowledges that there is no objective evidence of fibromyalgia (Doc. 21 at 1), but argues that fibromyalgia is a "diagnosis of exclusion" (i.e. there is no objective testing for the malady), and that fibromyalgia can be properly diagnosed where

objective testing is negative and there are a sufficient number of tender points upon testing (Doc. 15 at 5; Doc. 21 at 1).  As noted by the ALJ, however, no diagnosis of fibromyalgia is "supported by any credible medical opinion or objective laboratory test findings."  A.R. 20.  Although Dr. Rosenberg opined that Plaintiff had 18/18 tender points, his opinion is undercut by the following facts noted by the ALJ: Dr. Rosenberg is not a rheumatologist, *see* 20 C.F.R. § 416.927(c)(5) ("We generally give more weight to the opinion of a specialist about medical issues related to his or her area of specialty than to the opinion of a source who is not a specialist."); Dr. Jones found only 4/18 tender points (A.R. 21, 466); and Dr. Rosenberg's treatment notes failed to provide any basis for his opinion that Plaintiff suffered from fibromyalgia or has 18/18 tender points (A.R. 20). As the ALJ also noted, Dr. Rosenberg opined that his fibromyalgia findings dated back to 2006, but he did not begin treating Plaintiff until 2012.  A.R. 22.  In addition, he had not treated or diagnosed Plaintiff's fibromyalgia before submitting his medical opinion. A.R. 22; *see* 20 C.F.R. § 416.927(c)(2)(ii) (ALJ must consider whether the source has provided treatment for the impairment in question); *see also* 20 C.F.R. 416.927(c)(2)(i) (ALJ should consider whether a treating source has seen a claimant "a number of times and long enough to have obtained a longitudinal picture" of the claimant's impairment). Because Dr. Rosenberg's treatment notes do not disclose on what basis he reached this diagnosis of fibromyalgia and its accompanying restrictions, the ALJ properly discounted his opinion.  *See Tommasetti*, 533 F.3d at 1041 (finding that incongruity between a doctor's medical opinion and her treatment records is a specific and legitimate reason to discount her opinion).

Second, the ALJ noted that Dr. Rosenberg's opinion is "quite conclusory, providing little explanation of the evidence relied on in forming [his] opinion."  A.R. 22. This is a specific and legitimate reason for discounting Dr. Rosenberg's opinion.  *See Bayliss*, 427 F.3d at 1216.  Dr. Rosenberg's check-the-box forms do not explain what clinical findings he relies upon to conclude Plaintiff is functionally restricted by her

- 10 -

fibromyalgia. The ALJ was warranted in discounting Dr. Woodall's opinion for this reason. *See Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012) ("[An] ALJ may permissibly reject check-off reports that do not contain any explanation of the bases of their conclusions.") (internal punctuation and citations omitted).

Third, the ALJ asserted that Dr. Rosenberg uncritically relied on Plaintiff's subjective complaints. A.R. 22. Although this reason to discount Dr. Rosenberg's opinion overlaps significantly with the ALJ's other reasons, it is a specific and legitimate reason. *Thomas*, 278 F.3d at 957 ("The ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings.").

The Court concludes that the ALJ provided specific and legitimate reasons for discounting Dr. Rosenberg's opinion, supported by substantial evidence. The decision therefore was not legal error.

### 4.     Monte L. Jones, M.D.

Plaintiff argues that the ALJ committed legal error by improperly discounting the opinion of consultative examiner, Monte L. Jones, M.D. Doc. 15 at 7. On October 8, 2011, Dr. Jones completed a check-the-box form offering the following opinions: Plaintiff can occasionally lift and/or carry 20 pounds and can frequently lift and/or carry 10 pounds; Plaintiff has no limitations in standing and/or walking; Plaintiff has no limitations in sitting; Plaintiff is not restricted in her ability to see, hear, or speak; Plaintiff can occasionally climb ramps and stairs, stoop, kneel, crouch, and crawl; Plaintiff can never climb ladders, ropes, or scaffolds; Plaintiff has no limitations with respect to reaching; Plaintiff has no limitations with respect to handling, fingering, or feeling with her left hand; and Plaintiff can only occasionally handle, finger, and feel with her right hand. A.R. 470. The ALJ assigned Dr. Jones' opinion "great weight," except for the limitations on Plaintiff's ability to handle, finger, and feel with the right hand. A.R. 21-22.

Dr. Jones's medical opinion was contradicted by the opinion of Dr. Jabati, and the opinions of Drs. Green and Robins. These physicians each opined Plaintiff had greater abilities than those identified in Dr. Jones' opinion. A.R. 21-22. The ALJ therefore could discount Dr. Jones's opinion for specific and legitimate reasons supported by substantial evidence in the record. *Lester*, 81 F.3d at 830-31.

The ALJ provided two reasons for discounting the limitations on Plaintiff's ability to handle, finger, and feel with her right hand. First, the ALJ asserted that there is no support for these limitations in the record, not even from Dr. Jones' own examination of Plaintiff's right hand. A.R. 21. In his examination, Dr. Jones found that Plaintiff's right hand had normal sensitivity, range of motion, and was sufficiently strong to function properly. A.R. 467. Dr. Jones' examination notes reveal no basis for the manipulative restriction. This incongruity between Dr. Jones' treatment notes and his medical opinion is a specific and legitimate reason for discounting his opinion. *Tommasetti*, 533 F.3d at 1041. Plaintiff asserts that the ALJ committed legal error because other state agency physicians found similar manipulative restrictions. Doc. 15 at 7. Plaintiff is incorrect. Although the ALJ stated in her decision that Drs. Green and Robins had opined that Plaintiff had manipulative restrictions with her right hand (A.R. 22), the ALJ was incorrect. Neither doctor found Plaintiff to have such restrictions in her right hand. A.R. 79, 101.

Second, the ALJ asserted that Dr. Jones relied "quite heavily on [Plaintiff's] subjective complaints." A.R. 21. Although this reason to discount Dr. Rosenberg's opinion overlaps significantly with the ALJ's other reason, it is a specific and legitimate reason. *Thomas*, 278 F.3d at 957 ("The ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings."). Plaintiff does not argue that clinical findings support Dr. Jones' opinion. Given that the record contains no other objective

findings supporting a manipulative restriction, the ALJ's conclusion that Dr. Jones' limitation was based on Plaintiff's incredible subjective complaints was reasonable.

The Court concludes that the ALJ provided specific and legitimate reasons, supported by substantial evidence, for discounting Dr. Jones' opinion. The decision was not legal error.

### B.     Due Process of Law.

After Plaintiff's hearing, the ALJ sent interrogatories to a vocational expert. Doc. 15 at 8; A.R. 306. The ALJ posed only one RFC hypothetical based on the RFC that she would adopt in her decision. *Id*. The ALJ based her step-five analysis on the vocational expert's response.

Plaintiff asserts that she was denied Due Process of law because the ALJ refused to send additional interrogatories to the vocational expert that included a more restrictive RFC. *Id*. Plaintiff argues that "[b]y accepting the opinion of the [vocational expert] without allowing for any additional input from the claimant, the ALJ did not fully and fairly develop the record." *Id*. at 9.

Because an ALJ is required to include only those limitations that she finds supported by the record in her hypothetical questions to the vocational expert, Plaintiff's constitutional claim is meritless. *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 886 (9th Cir. 2006) ("[I]n hypotheticals posed to a vocational expert, the ALJ must only include those limitations supported by substantial evidence.") (citation omitted).

**IT IS ORDERED** that the final decision of the Commissioner of Social Security is affirmed. The Clerk shall enter judgment accordingly and terminate this case.

Dated this 3rd day of June, 2014.

_____
David G. Campbell
United States District Judge